**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Skylar Hartwig, | No. CV-23-00696-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| American Airlines Incorporated, | |
| Defendant. | |

Pending before the Court is Defendant American Airlines, Inc.'s ("American") Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") (Doc. 29). Plaintiff Skylar Hartwig filed a response (Doc. 33) to which American replied (Doc. 34). The Court has considered the briefings and relevant case law and will grant Defendant's Motion as to Count I and deny the Motion as to Count III.

**I.  BACKGROUND**

Plaintiff is employed by American as a Customer Experience Escalation and Resolution Representative ("RCR"). (Doc. 26 at 2 ¶¶ 3–4.) Plaintiff is one of approximately 340 RCRs working at American's Customer Relations Service workplace in Tempe, Arizona. (*Id.* ¶ 6.) Some RCRs work from home. (*Id.*) As an RCR, Plaintiff provides post-flight customer service to American's customers. (*Id.* at 4 ¶¶ 20–21, 23; 8–9 ¶¶ 41–48.) RCRs also handle requests unrelated to flights, including charitable solicitations or providing educators with safety cards for their classrooms. (*Id.* at 8 ¶ 44.) Additionally, RCRs review and investigate customers' complaints or route them to an

appropriate specialty team. (*Id.* at 8–9 ¶ 46.)

Plaintiff's managers instructed him to log on to his computer fifteen minutes prior to the start of his shift. (*Id.* at 9–10 ¶ 54.) Plaintiff claims that American routinely did not pay him for the time attributed to this pre-shift log-in period. (*Id.* at 10 ¶ 56.) However, after confronting American about not receiving compensation for the pre-shift period, American paid Plaintiff for those periods between October 12, 2022 and December 9, 2022. (*Id.* at 10–11 ¶ 57.) American refused, however, to provide Plaintiff with records of additional pre-shift hours work or compensate him for any other period. (*Id.*)

In his SAC, Plaintiff alleges a (1) violation of the Fair Labor Standards Act ("FLSA") for unpaid overtime; (2) violation of the FLSA for unpaid minimum wage; (3) violation of the Arizona Wage Act ("AWA") for unpaid wages; and (4) violation of the Arizona Minimum Wage Act ("AMWA") for unpaid Arizona minimum wage. (*Id.* at 11–13 ¶¶ 59–82.)

## II.   LEGAL STANDARD

To survive a Federal Rule of Civil Procedure 12(b)(6) motion for failure to state a claim, a complaint must comply with Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face."

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## III. DISCUSSION

The parties have stipulated to the voluntary dismissal of Counts II and IV in the SAC. (Doc. 27 at 7.) Accordingly, this Order addresses Counts I and III relating to overtime under the FLSA and unpaid wages under the AWA, respectively.

### A. FLSA Overtime

"The FLSA was enacted 'to protect all covered workers from substandard wages and oppressive working hours.'" *Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999) (internal citation omitted) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). "The FLSA's minimum wage and overtime provisions are central among the protections the Act affords to workers." *Id.* (discussing 29 U.S.C. §§ 206, 207). The overtime provisions in § 207 have several exemptions—relevant here, an exemption for "any employee of a carrier by air subject to the provisions of title II of the Railway Labor Act." 29 U.S.C. § 213(b)(3). Title II of the Railway Labor Act (the "RLA") exempts from the FLSA overtime provision any "common carrier by air engaged in interstate or foreign commerce . . . and every air pilot or other person who performs any work as an employee or subordinate official of such carrier." 45 U.S.C. § 181; *see also Washington ex rel. Stimson Lumber Co v. Kuykendall*, 275 U.S. 207, 211 (1927) ("[O]ne

who undertakes for hire or transport from place to place the property of others who may choose to employ him is a common carrier.").

Courts have generally deployed two methods to interpret the exemption. Some courts have applied the exemption to all employees of an air carrier based on the statutory text alone. *See, e.g.*, *Valdivieso v. Atlas Air, Inc.*, 305 F.3d 1283, 1286–87 (11th Cir. 2002); *Mongrut v. S. Airways Express LLC*, No. 22-80678-CIV-MAYNARD, 2023 WL 3369281, at *5 (S.D. Fla May 3, 2023); *Kouchi v. Am. Airlines, Inc.*, No. CV 18-7802 PSG (AGRx), 2019 WL 3059409, at *2–3 (C.D. Cal Apr. 9, 2019); *LaMoutte v. Spirit Airlines, Inc.*, No. 18-CV-61939, 2018 WL 6169626, at *3 (S.D. Fla. Nov. 26, 2018); *Adams v. U.S. Airways, Inc.*, No. CIV 10-1088-PHX-DKD, 2011 WL 644089, at *4 (D. Ariz. Feb. 11, 2011). This view takes an employer-oriented approach—that is, employees are exempt simply by virtue of their employers' classification. *See Valdivieso*, 305 F.3d at 1287.

According to American, the plain language of § 213(b)(3) renders Plaintiff exempt from overtime purely because he is an American employee. (Doc. 29 at 5.) Plaintiff does not dispute that American is a common air carrier subject to Title II of the RLA or that he is an American employee. (*See* Doc. 33 at 3.) Thus, under a plain language approach, Plaintiff would be exempt from the FLSA overtime provisions under § 213(b)(3) as a matter of law.

Many other courts, however, have found that not only must an employer qualify as an air carrier subject to the RLA, but the employee must do work related to the transportation activities of the employer. "[T]he Act 'was intended to apply only to transportation activities and that work which bears more than a tenuous, negligible and remote relationship to the transportation activities [of the employer].'" *Slavens v. Scenic Aviation, Inc.*, 221 F.3d 1353, 2000 WL 985933, at *2 (10th Cir. 2000) (unpublished) (second alteration in original) (quoting *Nw. Airlines, Inc. v. Jackson*, 185 F.2d 74, 77 (8th Cir. 1950)); *see also Thibodeaux v. Exec. Jet Int'l*, 328 F.3d 742, 754 (5th Cir. 2003). But the fact that the Plaintiff does not work at the airport does not preclude him from being an exempt employee. *See LaMoutte*, 2018 WL 6169626, at *3 (exemption applied to

employee hired to perform email marketing analysis); *Verrett v. SABRE Grp., Inc.*, 70 F. Supp. 2d 1277, 1279–83 (N.D. Okla. 1999) (exemption applied to affiliate company that provided passenger reservations, accounting, and other related functions to air carriers). These same cases also show that an employee does not have to interact with the aircraft to be exempt. *See Solis v. Am. Airlines, Inc.*, No. CV 19-10181 PSG (AFMx), 2021 WL 4893247, at *4–5 (exemption applied to airport agent); *Kouchi*, 2019 WL 3059409, at *2–3 (exemption applied to a flight services coordinator at the airport). Courts have looked beyond the plain language to prevent the exclusion from "apply[ing] to all work, regardless of its connection to transportation, merely because [a] company carrying on the work included carrier activities within its company functions." *Nw. Airlines*, 185 F.2d at 77. In other words, courts have prevented exempt air carriers from wholly exempting employees that perform duties unrelated to transportation activities. *See id.*

American argues that, even if the Court reads beyond the plain language, Plaintiff's work bears more than a tenuous, negligible, and remote relationship to transportation, and thus he is subject to the exemption. (Doc. 29 at 5.) In response, Plaintiff seems to conflate the prevailing tenuous, negligible, and remote relationship test with the Department of Labor's ("DOL") 80/20 analysis. (Doc. 33 at 3.) Accordingly, Plaintiff argues that he spends less than 80% of his time on tasks directly related to air transportation, and thus, he is not subject to the exemption. (*Id.* at 8.)[1]

In his SAC, Plaintiff maintains that he is an employee of American and that he engages in customer relations by answering customer correspondence and addressing customer concerns. (Doc. 26 at 4–5 ¶¶ 19–24.) Plaintiff further maintains that he almost always works with American customers that have completed all air transportation. (*Id.* at 4 ¶ 21.) Plaintiff's new factual allegations are that he "do[es] not assist customers in

---

[1] The Court previously rejected Plaintiff's invocation of the 80/20 analysis. (Doc. 20 at 5 n.1). The analysis is a DOL tool used to determine if the employee does a substantial amount of nonexempt work. 29 C.F.R. § 786.1. However, as discussed herein, the SAC only alleges that Plaintiff does customer service work. Therefore, applying the 80/20 rule is not appropriate here.

making travel arrangements . . . but rather handle[s] a broad range of post-flight customer service complaints," which include attending meetings, fielding complaints regarding the handling of service animals and requests for charitable donations, providing safety materials to schoolteachers, and routing customer service complaints to other departments. (*Id.* at 8–9 ¶¶ 41–48.)

Plaintiff's SAC suffers from the same fatal flaw as his First Amended Complaint: it does not allege job responsibilities that are unrelated to his customer service duties for American. (*See* Doc. 20 at 4–5.) Although Plaintiff pleads that RCRs are "Management Support Staff" as opposed to "Transportation Staff" or the "Reservations Department," he does not allege that RCRs are anything more than airline customer service employees. (Doc. 26 at 8–9 ¶¶ 41–48). Instead, Plaintiff's new allegations simply expound on those customer service responsibilities he alleged in his First Amended Complaint. Consequently, Plaintiff fails to show how his particular job as an RCR is anything but customer service, or that he performs sufficient other non-exempt work for American. *See Signature Flight Support*, 32 N.M.B. 214, 215 (2005) (Customer service is understood to be a job "traditionally performed by airline employees"); *see also Worldwide Flight Servs., Inc.*, 31 N.M.B. 386, 395 (2004) ("Worldwide and its employees at Building 9, JFK, are subject to the RLA" which included customer service employees who answer telephones). Therefore, the Court finds that, based on the allegation in the SAC, Plaintiff is an employee subject to the RLA. There is nothing about the customer service work in question that has a tenuous, negligible, and remote relationship to the transportation activities of American—i.e., serving their customers.

### B. Failure to Pay Wages

Defendant argues that Plaintiff cannot use the AWA to obtain unpaid wages because he fails to state the authority that created a "reasonable expectation" that he would be paid for pre-shift log in time. (Doc. 29 at 9.) According to American, only three, inapplicable authorities could create such expectation: (1) a contract or promise; (2) Arizona law; or (3) the FLSA. (*Id.*) Plaintiff counters that he had a reasonable expectation to be paid, and in

fact was paid, for some of the time spent logging into his work computer. (Doc. 33 at 9.)

Under Arizona law, employment, by its nature, is contractual. Ariz. Rev. Stat. § 23-1501(A)(1). Additionally, Arizona law requires an employer to pay its employees all wages due. Ariz. Rev. Stat. § 23-355. "'Wages' means nondiscretionary compensation due an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation." Ariz. Rev. Stat. § 23-350(7). This reasonable expectation requirement can arise from an express contract, an implied contract based on the parties' course of dealing, or an employer's policy or practice. *Zavaleta v. OTB Acquisition LLC*, No. CV-19-04729-PHX-JAT, 2021 WL 824419, at *5 (D. Ariz. Mar. 4, 2021); *Morgan v. Freightliner of Ariz., LLC*, No. CIV 16-498-TUC-CKJ, 2017 WL 2423491, at *7 (D. Ariz. June 2, 2017).

Plaintiff alleges that he was paid an hourly rate of $15.37 in April 2015, $21.05 before January 9, 2023, and $22.10 after January 9, 2023. (Doc. 26 at 7 ¶ 39.) As a part of his RCR training, Plaintiff was instructed to begin logging on to his work computer fifteen minutes before the start of his shift. (*Id.* at 9–10 ¶ 54.) Plaintiff regularly did so and was initially uncompensated for the time spent readying his computer. (*Id.* at 10–11 ¶¶ 55, 57.) Upon request, American compensated Plaintiff for those pre-shift hours worked between October 12, 2022 and December 9. (*Id.* ¶ 57.) Now, Plaintiff requests that he be compensated for the remainder of this unpaid time. (*Id.* at 14 ¶ 12.)

American presents multiple arguments to assail Plaintiff's claim. First, American declares that listing an hourly rate is insufficient to state a claim under the AWA. (Doc. 34 at 10.) American cites to *Zavaleta*, in which this Court found that an employee working as both a culinary manager and a handyman did not entitle to the employee to pay as a handyman because there was no allegation of a contractual entitlement to such wages. 2021 WL 824419, at *5. American extrapolates the holding in *Zavaleta* to argue that Plaintiff's failure to allege American promised to pay him for the time he is seeking dooms his claim. (Doc. 34 at 10.) This logic is deeply flawed. First, the Court cannot cognize to

what extent *Zavaleta* evidences American's argument, as Plaintiff is contracted to do one type of work for American—customer service. Part of Plaintiff's responsibilities, as required by his training, is to log on to his work computer fifteen minutes prior to his shift starting. In his SAC, Plaintiff alleges his hourly rate, the period that he has been paid for the log-in time, and that American has refused to pay him for the alleged outstanding, unpaid fifteen-minute periods. These allegations are enough to maintain an action under the AWA. Thus, contrary to American's contention, Plaintiff's hourly rate of pay is of little moment in determining whether he has sufficiently plead that he is not being paid.

Next, American attempts to characterize Plaintiff's class allegations as to his FLSA claim as a tacit admission that American's policy was not to pay Plaintiff for pre-shift log-in time. (Doc. 29 at 9.) Additionally, American argues that, because of its policy and the lack of allegations concerning a contract between Plaintiff and American, Plaintiff cannot show that he had a reasonable expectation to be paid for his log-in time. (*Id.*) This argument, however, collapses under Plaintiff's allegation that American paid Plaintiff when he brought the period of uncompensated time to its attention. (Doc. 26 at 10–11 ¶ 57.) Thus, if Plaintiff's allegations prove true, American's refusal to compensate Plaintiff for wages owed on all pre-shift log in periods does not show a policy that precludes Plaintiff from obtaining those wages. Rather, it evidences a dogged attempt to avoid paying an employee owed wages. Therefore, not only do Plaintiff's allegations dispel American's claim regarding its payment policy, but they also show that after American partially compensated Plaintiff, he had a reasonable expectation that he would receive compensation for the remaining unpaid log-in time.[2]

American also argues that its choice to pay Plaintiff for the October 2022 to December 2022 period did not create an implied contract that rendered future payments mandatory. (Doc. 34 at 11.) To make this argument, American relies on *Heimer v. Price, Kong & Co.*, No. 1 CA-CV 07-0643, 2008 WL 5413368, at *4 (Ariz. Ct. App. Dec. 30,

---

[2] The Court agrees with American that the limited FLSA "gap time" or "straight time" provisions do not apply because Plaintiff is exempt from FLSA overtime. (*See* Doc. 29 at 9–10.) Plaintiff does not challenge "gap time" or "straight time" in his Response. (*See* Doc. 33.)

2008) (unpublished). Therein, the Arizona Court of Appeals explained that past conduct of paying a bonus did not create an implied contract to pay bonuses in the future. *Heimer*, 2008 WL 5413368, at *4. Here, Plaintiff's SAC alleges that American has not paid wages owed for hours worked—not that Plaintiff is entitled to a bonus or other comparable *additional* pay. (*See* Doc. 26 at 10 ¶ 55.)

Ultimately, Plaintiff has sufficiently plead his AWA claim and it would be improper for the Court to dismiss it.

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** granting in part and denying in part Defendant American Airline's Motion to Dismiss (Doc. 29) Plaintiff's SAC (Doc. 26).

**IT IS FURTHER ORDERED** dismissing Count I without prejudice.

Dated this 9th day of October, 2024.

Honorable Susan M. Brnovich
United States District Judge